The People of the State of New York, Respondent,
*v.* Ben Harrison, Appellant.

Crimes — construction and application of statute prohibiting and punishing the issuing, by election officials, of false returns of ballots cast at primary elections — when making of false returns not a crime unless made with knowledge or notice of its falsity, or under circumstances from which a personal intention to make a false statement may be inferred.

1. The statute (Penal Law, § 751, subd. 12) punishes not the intentional making, by a poll clerk, of a statement of the vote at an election, which proves to be false, but the willful making of a false statement, *i. e.*, with knowledge or notice of its falsity, or under circumstances from which a personal intention to make a false statement might be inferred. It does not cast upon the poll clerks the absolute duty of verifying, by personal examination of the ballots in all cases, the announcement of the result by the chairman of the board.

2. Defendant, who was an inspector at a primary election in the city of New York, and designated by the chairman of the board as a tally clerk during the canvass of the votes, was indicted for and convicted of a misdemeanor for a violation of the statute. The statute uses the word " wilfully " in all the acts therein made criminal. The word " wilfully " as used in that connection, alone and not in connection with the word " maliciously," means " intentionally and by design " as distinguished from " maliciously or wantonly." The lack of a bad motive or of a design to injure some one is no defense under the statute, but the lack of criminal intent is a defense.

3. Upon the trial the case was submitted, under exceptions by defendant, as one where the act of signing the false statement was criminal, irrespective of knowledge or notice, express or implied, on the part of the falsity of its contents. This was error and the judgment of conviction must be reversed.

*People* v. *Harrison*, 190 App. Div. 902, reversed.

(Submitted May 19, 1924; decided June 3, 1924.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 28, 1919, which affirmed a judgment rendered at an Extraordinary Trial Term for the county of New York upon a verdict convicting the defendant of

making a false return of the result of a canvass at a primary election.

*Louis H. Solomon* for appellant. Reversible error was committed in the charge of the learned court below and in the refusal to charge defendant's requests. (*People* v. *Luft,* 192 App. Div. 713; *People* v. *Lilymead,* 192 App. Div. 719; *Wass* v. *Stephens,* 128 N. Y. 128.)

*Joab H. Banton, District Attorney (Felix C. Benvenga* of counsel), for respondent. There was no error in the charge. (*People* v. *Werner,* 174 N. Y. 132; *People* v. *Taylor,* 192 N. Y. 398; *People* v. *West,* 106 N. Y. 293; *People* v. *Kibler,* 106 N. Y. 321; *People* v. *D'Antonio,* 150 App. Div. 109; *People* v. *Sheffield Farms Co.,* 180 App. Div. 615; 225 N. Y. 25; *Ten. House Dept.* v. *McDevitt,* 215 N. Y. 160; *Com.* v. *Smith,* 166 Mass. 370; *Com.* v. *Gray,* 160 Mass. 327; *People* v. *Roby,* 52 Mich. 577; *Shevlin-Carpenter Co.* v. *Minn.,* 218 U. S. 57; *C., B. & Q. Ry.* v. *United States,* 220 U. S. 559.) There was no error in the court's refusal to charge defendant's request. (*People* v. *McGloin,* 91 N. Y. 241; *People* v. *Pallister,* 138 N. Y. 601; *People* v. *Katz,* 154 App. Div. 44, 51; affd., 209 N. Y. 311; *People* v. *Lumsden,* 141 App. Div. 158.)

POUND, J. The defendant, with three others, was charged in two separate counts of a joint indictment, under section 766 and under section 751, subdivision 12, of the Penal Law, with making a false statement of the results of the primary election held in the city and county of New York, on the 19th day of September, 1917, for the nomination of mayor of the city of New York, on the Republican ticket, while the said defendant was acting as an inspector of election.

Section 766 of the Penal Law at this time read as follows:

" An inspector or poll clerk of an election or town meeting, who *intentionally* makes, or attempts to make,

a false canvass of the ballots cast thereat, or any false statement of the result of a canvass, though not signed by a majority of the inspectors, or any person who induces or attempts to induce any such inspector or clerk so to do, is guilty of a *felony.*"

Section 751, subdivision 12, of the Penal Law read as follows:

" Any person who:   *   *   *

" 12. Being an officer, teller, canvasser, election inspector, primary inspector, custodian of primary records, clerk or employee of or in the office of a custodian of primary records, or any officer of a political committee or a convention, *wilfully* omits, refuses or neglects to do any act required by the election law or otherwise by law, or violates any of the provisions of the election law, or makes or attempts to make any false canvass of the ballots cast at a political caucus, *primary election,* or convention, or a false statement of the result of a canvass of the ballots cast thereat;   *   *   *

" Is guilty of a *misdemeanor.*"

The conviction was on the second count of the indictment, charging the act as a misdemeanor.

The candidates for the nomination for mayor of the city of New York on the Republican ticket, in the official primary election held on the 19th day of September, 1917, were the late John Purroy Mitchel and William M. Bennett. The indictment alleges that in the fifteenth election district of the sixteenth assembly district, where defendant was one of the inspectors of election, the actual votes cast were, three for the late John Purroy Mitchel, and twenty-four for William M. Bennett, while the inspectors of election of the said district, including the defendant, signed a statement of the result of the election, showing thirteen votes for the late John Purroy Mitchel, and thirteen votes for William M. Bennett. The defendant offered evidence tending to show that he was designated by the chairman of the board to act

as poll clerk during the balloting and sat at his poll book diagonally across the twelve-foot polling table, more than twelve feet away from the chairman of the board, making his entries as each voter appeared, and answered the questions asked of him; that after the polls were closed and the canvass began, he was designated by the chairman of the board to act as tally clerk, and he sat in the same place, more than twelve feet away from the chairman of the board, tallying on his tally sheet each vote as it was called off by the chairman; that he could not see the contents of the ballots read off by the chairman and did not know the contents thereof; that he relied on the truth and accuracy of the chairman's count and tallied accordingly as the chairman announced the votes, believing the same to be true; that the result statement signed by him tallied with that of his co-tally clerk; and that if the result statement did not express the true result of the canvass, defendant signed it under mistake of fact, induced by the error or fraud of the chairman of the board.

The district attorney contends that the statute declares the act of making a false statement of the result of the primary election criminal, irrespective of guilty knowledge, motive or intent and that ignorance of the fact that the statement was false, no matter how guileless, is no defense; that the crime, therefore, depended solely on doing the prohibited act and the defendant was properly convicted. (*People* v. *Werner*, 174 N. Y. 132, 133, 134.) He would thus narrow the language of the statute and make an election officer act at his own risk whenever he discharged any duty under the Election Law. The business is not so onerous.

Penal Law, section 751, subdivision 12, clearly uses the word " wilfully " in connection with all the acts therein made criminal. The word " wilfully " as used in that connection, alone and not in connection with the word " maliciously " as in *Wass* v. *Stephens* (128 N. Y. 123, 128),

means " intentionally and by design " as distinguished from " maliciously or wantonly." (*People* v. *Marrin*, 205 N. Y. 275, 279; *People* v. *Foster*, 204 App. Div. 295; affd., 236 N. Y. 610.) The lack of a bad motive or of a design to injure some one is no defense under the statute, but the burden is on the People to show that the act of making a false statement was intentional.

The district attorney contends, secondly, that the word " wilfully " as used in the statute, connotes nothing more than the element of general criminal intent; that such intent might be implied from the voluntarily doing of an act which the law declares to be criminal; and that the jury was properly instructed on that theory. The record does not sustain this contention.

The trial justice instructed the jury over defendant's exception that when defendant voluntarily signed the certificate attached to statement of result: " We hereby certify that the foregoing statement of result is true and correct in all respects," he violated the law if the statement was false. By requests to charge defendant sought further to obtain instructions to the effect that if defendant correctly tallied the votes as announced by the chairman of the board, in the belief that the chairman had correctly announced the same, and without himself examining the contents of each ballot, he must be acquitted, or that it was for the jury to say whether he was justified in relying on the statements of the chairman in announcing the vote. To such refusals to so charge proper exceptions were taken. The case was, therefore, submitted as one where the intentional act of signing the statement was criminal, as matter of law, irrespective of knowledge or notice, express or implied, on the part of the defendant of the falsity of its contents.

The Election Law punishes, not the intentional making of a statement which proves to be false, but the willful making of a false statement, *i. e.*, with knowledge or notice of its falsity, or under circumstances from

which an intention to make a false statement might be inferred. It does not cast upon the poll clerks the absolute duty of verifying, by personal examination of the ballots in all cases, the announcement of the result by the chairman of the board. Yet this, in substance,. is the duty which was imposed on the defendant.

The judgment should be reversed and a new trial ordered.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgments reversed, etc.